### ROBERT E. LEE LIFE INS. CO. v. SANDERSON.

#### No. 1898.

Court of Civil Appeals of Texas. Eastland.

April 28, 1939.

Cox & Hayden, of Abilene, for appellant.

Anderson & Dickson, of Sweetwater, for appellee.

FUNDERBURK, Justice.

The suit is upon a policy of life insurance, in the sum of $250, issued by the defendant to Mrs. J. T. Sanderson, the insured, in which the plaintiff J. T. Sanderson was the beneficiary. By the terms of the policy defendant's obligation to pay the $250 was conditioned upon the payment by the insured, or the beneficiary, of the monthly premiums or assessments of $2.-20. The last four of such monthly payments had not been made at the date of Mrs. Sanderson's death. The effect of such non-payment was sought to be avoided by a plea of estoppel. By such plea it was alleged in substance that the insurance had, in October, 1934, been taken over by defendant from one or more former companies; that there had long existed a practice by which the insurance company drew drafts upon plaintiff for the premiums or assessments, such drafts being drawn on the First National Bank of Blackwell, Texas; that said bank was authorized by the insured to pay such drafts; that it had paid all drafts presented for payment and would have paid any and all drafts so presented; that no draft was presented to said bank for the payment of the January 1, 1937, premium nor for the premiums for the succeeding months of February, March or April; that the fact of such non-payment was unknown to the plaintiff, or the insured, they having been given no notice thereof, or of any withdrawal of the courtesy or privilege of having the premiums paid upon such drafts; that if notice had been given, such payments would have been made when due and, by reason of all of which, it was alleged that defendant was estopped to assert its' nonliability on the ground of the failure to make such payments. By the plea, payment of the four premiums was tendered.

The defendant, in addition to exceptions and denials, alleged provisions of the policy as follows: "All premiums are payable at the home office of the company but may be paid to any duly authorized representative of the company in immediate exchange of an official receipt or entry upon the regular premium receipt book. If for any reason the premium be not called for when due it shall be the duty of the policy holder, before said premium be in arrears four weeks, to bring or send said premium to the home office of the company at Abilene * * * this policy is subject to the benefits, provisions and conditions set forth on the subsequent pages hereof, and the Constitution and by-laws of the company as they now exist or may hereafter be amended or changed."

A provision of the constitution and by-laws was alleged as follows: "Sec. 6. All notices, documents or other information to which a policy holder may be entitled, shall be delivered in person or by depositing same in the U. S. Mail, properly directed to the last known address of such policy holders as may be shown upon the records of the company, or if it be an assessment or premium notice to a policy holder, who has designated some bank where his or her dues, assessments or premiums shall be collected, then the mailing of, or the delivery of such notice to such bank in person, shall constitute a legal notice to any such policy holder; such policy holder shall be deemed to have notice of any dues, assessments or premiums by the presenting at any bank designated by them of a draft for payment whether same be paid or returned. The drawing on a bank account for any dues, assessments or premiums of any insured or on such account as may be designated by insured or agent is a courtesy or privilege which may be extended or withdrawn by giving notice at any time."

Upon a jury trial, the court instructed the return of a verdict for plaintiff, which being done, judgment was accordingly rendered thereon, from which the defendant appeals.

The parties will be referred to as plaintiff and defendant, the same as in the trial court.

The defendant specially excepted to the plaintiff's trial petition on the ground that "Nowhere is said policy and the terms thereof set out and described in plaintiff's petition and the terms of same are not set out and therefore there is no basis for any recovery under plaintiff's pleadings."

The exception is not supported by the record. Certain provisions of the policy were alleged. It is not essential to a statement of a cause of action upon an insurance policy that all the provisions thereof be alleged. Automobile Insurance Co. v. Bridges, Tex.Civ.App., 5 S.W.2d 244, and authorities there cited.

If the policy must necessarily have contained terms and provisions which should have been alleged, the exception did not state or describe them in such way as particularly to direct the attention of the court to their absence from the allegations. Some provisions of the policy having been alleged, and the only question, if any, being whether others were omitted, the exception was more in the nature of a general exception than a special exception. Without intimating an opinion that the pleading was subject to a proper special exception, we readily conclude that there was no error in overruling the exception made.

In our opinion, the evidence established conclusively that the draft for the January 1, 1937 premium of $2.20 was never presented to the First National Bank, of Blackwell, Texas, or the First National Bank of Bronte, Texas; that as reflected by a long course of dealing between the parties, a presentation of such draft to the First National Bank of Bronte, Texas would have constituted such a presentation to the First National Bank of Blackwell, Texas, and vice versa the two banks having become merged, even before the policy in suit was issued, and all prior drafts on the First National Bank of Blackwell, Texas, having been received and paid by the First National Bank of Bronte, Texas. No drafts were drawn on either of said banks for premiums or assessments due for the months of January, February, March or April. The draft for $2.20 premium due January 1, 1937, was, for some reason, unexplained in the evidence, missent to the First National Bank of Blackwell, Oklahoma, where payment was refused and draft returned with the notation thereon, "No account." Upon the return of the draft the defendant failed to notice that it had been sent to the wrong bank. Thereupon on January 13, 1937, the defendant wrote to the First National Bank of Blackwell, Texas, as follows: "Gentlemen: Could you give us the address of J. T. Sanderson who formerly had an account with your bank. We note the draft in the amount of $2.20 drawn on Mr. Sanderson for his insurance premium, this draft being drawn on your bank, was returned to us marked 'no account.' If you could give us Mr. Sanderson's address, we would certainly appreciate the favor." Reply was received consisting of a notation on the letter as follows: "J. T. Sanderson's address is Blackwell, Texas. There has been no bank at Blackwell for four years. Mr. Sanderson does business with First National Bank, Bronte. We have more trouble with drafts such as yours than with any one thing. If we pay the customer don't want it paid. If we send it back, its H—again—If you want this thing paid get signed order from your clients and file with bank." The notation was written by J. T. Harmon, the vice-president of the First National Bank of Bronte, and who had been President of the First National Bank of Blackwell, Texas, at the time the latter was merged with the former.

Under the above facts the rights of the parties seem to us to be controlled by the proper construction of said section 6, of the constitution and by-laws. There is first a general provision that "All notices, documents or other information to which a policy holder may be entitled shall be delivered in person or by depositing same in the U. S. Mail properly directed to the last known address of such policy holders as may be shown upon the records of the company * * *." That provision has no application since an alternative provision is the one applicable. Such alternative provision is "or if it be an *assessment* or *premium notice* to a policy holder who has designated some bank where his or her dues, assessments or premiums shall be collected, then *the mailing of,* or the *delivery of* such *notice* to such *bank* in person *shall constitute a legal notice to any such policy holder* * *." (Italics ours) The subject matter of the last quoted provision, it is to be observed, is *notice* to the policy holder *of assessments* or *premiums due.* There is a still further alternative as follows:

"Such policy holder shall be deemed to have *notice* of any dues, assessments or premiums by the presenting at any bank designated by them of a draft for payment whether same shall be *paid* or *returned*." (Italics ours) Two alternative methods of giving notice to the policy holder of assessments or premiums due, are thus provided, both applicable where a bank has been designated to make payments upon drafts. One is a formal or express notice either delivered in person or mailed to the bank. The other, is simply the act of presenting to the bank a draft for the amount of the assessment or premium due. In the latter case if the draft be paid, notice of the assessment or premium due becomes immaterial, but if the draft, upon due presentation, be not paid, then nonpayment and return of the draft, perforce of the contract, constitutes notice to the policy holder that the assessment or premium is due and not paid. The policy holder in such case may yet make payment within four weeks and thereby avoid a forfeiture under one of the provisions quoted above from the defendant's pleading.

Another notice, in addition to notice of assessment or premiums due, is provided for as follows: "The drawing upon a bank account for any dues, assessments or premiums of any insured, or on such account as may be designated by insured, or agent, is a courtesy or privilege which may be extended or *withdrawn by giving notice* at any time." (Italics ours) No provision is made for giving the last mentioned notice to the bank, as is the case with the other two provisions for giving notice of assessments or premiums due. The notice of withdrawal of said "courtesy or privilege" is, we think, intended to be given to the policy holder. Defendant could have refused to extend the courtesy or privilege, but having extended it, could not withdraw it, except by giving notice thereof to the policy holder.

If the above interpretation of said section 6 be correct, then it appears from the undisputed evidence (a) that after December, 1936, no formal notice of assessments, or premiums, due were mailed or delivered to the bank. (No contention was made to that effect). (b) That no drafts for said four assessments or premiums, not paid, were presented to the bank for payment. Hence, there was no notice to plaintiff of any such assessments or premiums due, given according to any of the provisions

of the contract. Defendant having made no attempt to present drafts covering assessments or premiums due for the months of February, March or April, is to be regarded, we think, as having attempted to withdraw the formerly extended "courtesy or privilege" which must be held to have been ineffective, because of the failure to give notice thereof to the plaintiff, as provided.

The bank, if to be regarded as the agent of the plaintiff, was agent for a very specific and limited purpose. There is no warrant, we think, for the view that it was the agent of the plaintiff for any other purpose than paying the drafts, if and when, presented. The letter of January 13, 1937, addressed to the bank inquiring as to the residence of J. T. Sanderson was, in our opinion, no notice (its contents not having been communicated) to the plaintiff. It was not a compliance with any of the provisions of said section 6, by which notice to the plaintiff could be given by means of a transaction with the bank.

It is, therefore, our conclusion that the trial court did not err in instructing a verdict for plaintiff, all the other necessary facts being conclusively established by the evidence; that the judgment of the trial court should be affirmed, and it is, accordingly, so ordered.